UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBBIE ANN BOLTON, surviving child of Decedent, Ruth Clara Summers | ) ) ) |
| Plaintiff, | ) ) ) No. 3:20-cv-00683 |
| v. | ) ) |
| GALLATIN CENTER FOR REHABILITATION & HEALING, LLC | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Plaintiff Debbie Ann Bolton's pending Motion to Remand (Doc. No. 17) calls upon the Court to determine whether the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e, creates federal subject matter jurisdiction over state-law claims involving a nursing home's allegedly inadequate response to the COVID-19 pandemic. Defendant Gallatin Center for Rehabilitation & Healing, LLC ("Gallatin") has responded in opposition to Bolton's motion (Doc. No. 23), Bolton replied (Doc. No. 24), and both parties filed multiple rounds of supplemental briefing and notices of new authority (Doc. Nos. 29–30, 32–33, 36, 38–40, 43, 45–46). The United States also filed a Statement of Interest (Doc. Nos. 35, 35-1), to which Bolton responded (Doc. No. 37). For the following reasons, Bolton's Motion to Remand will be granted.

**I.    BACKGROUND**

Bolton's mother, Ruth Summers, was an 89-year-old resident at Gallatin's nursing home when she contracted COVID-19 and died from related complications on March 29, 2020. (Compl. ¶ 1). Following her mother's death, Bolton filed this action against Gallatin in the Circuit Court for Sumner County, Tennessee, on July 8, 2020.

The Complaint alleges that Gallatin's staff did not take proper measures to prevent or mitigate the spread of COVID-19 among residents, which ultimately caused the death of Ms. Summers. (Id. ¶¶ 24–41, 45). As a result, the Complaint asserts two state-law claims against Gallatin for gross negligence and recklessness.

On August 7, 2020, Gallatin filed a Notice of Removal (Doc. No. 1) stating that this case is removable under 28 U.S.C. § 1441(a) because it asserts claims "arising under" federal law within the meaning of 28 U.S.C. § 1331. (Id. ¶ 6). Specifically, Gallatin argues that Bolton's state law claims present a federal question because they necessarily involve a federal issue, are completely preempted by the PREP Act, and fall within the Act's scope. (Doc. No. 1 ¶¶ 7–8). In response, Bolton filed a Motion to Remand (Doc. No. 17) contending that the PREP Act does not provide grounds for removal.[1]

## II.  LEGAL STANDARD

Because federal district courts only have original jurisdiction over civil actions "*arising under* the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (emphasis added), defendants sued in state court generally may remove the case to federal district court under 28 U.S.C. § 1441(a) if the case arises under federal law.[2] See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 324–25 (6th Cir. 2007). On the other hand, "[i]f the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable." Palkow v. CSX Transp., Inc., 431 F.3d 543, 552 (6th Cir. 2005).

---

[1] Gallatin also filed a Motion to Dismiss (Doc. No. 13), but the Court stayed briefing on that motion pending resolution of Bolton's Motion to Remand. (See Doc. No. 19).

[2] 28 U.S.C. § 1441(b) also provides an avenue for state-court defendants to remove an action to federal court based on diversity of citizenship under 28 U.S.C. § 1332, but that provision is not at issue here because Gallatin does not argue that there is diversity jurisdiction in this case.

2

To determine whether a claim arises under federal law, courts apply what is commonly referred to as the "well-pleaded complaint rule." This rule provides that federal jurisdiction exists only in those cases in which a well-pleaded complaint (1) states a federal cause of action or (2) includes state-law claims that necessarily depend on a substantial and disputed federal issue.[3] Id. at 550 (quoting Thornton v. SW Detroit Hosp., 895 F.2d 1131, 1133 (6th Cir. 1990)); see also Ohio ex rel. Skaggs v. Brunner, 629 F.3d 527, 530 (6th Cir. 2010). As its name suggests, the well-pleaded complaint rule requires courts to ignore potential defenses and look only to the face of the complaint to determine whether a federal question exists. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Ultimately, "the plaintiff [is] the master of the complaint" and she "may simply avoid federal jurisdiction by relying exclusively on state law." Gentek, 491 F.3d at 325 (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 398–99 (1987)).

"Most rules have exceptions, of course, and the well-pleaded complaint rule is no different." Dillon v. Medtronic, Inc., 992 F. Supp. 2d 751, 757 (E.D. Ky. 2014) (Thapar, J.). "It has two: complete preemption and artful pleading." Id. Regarding the first exception, "[i]f Congress intends that a federal statute should 'completely preempt' an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law." Palkow, 431 F.3d at 552 (citing Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64 (1987)); see also Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 515 (6th Cir. 2003). "The complaint may thus be removed to federal court and will be treated as alleging a federal cause of

---

[3] The Sixth Circuit has sometimes referred to the substantial-federal-question doctrine as an "exception" to the well-pleaded complaint rule. See Mikulski v. Centerior Energy Corp., 501 F.3d 555, 560 (6th Cir. 2007). But this terminology is somewhat of a misnomer, as "[t]he substantial-federal-question doctrine . . . is not a true exception to the rule . . . because it does not permit jurisdiction based on federal issues raised outside the complaint." Dillon, 992 F. Supp. 2d at 761–64; see also Carmine v. Poffenbarger, 154 F. Supp. 3d 309, 315 (E.D. Va. 2015).

3

action, notwithstanding that on its face, the . . . complaint alleges only a state-law cause of action." Id. Under the second exception, the artful-pleading doctrine, "plaintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." Mikulski, 501 F.3d at 560; see also Brunner, 629 F.3d at 530 (noting that this exception applies if the complaint "artfully pleads state-law claims that amount to federal-law claims in disguise").

The party seeking removal has the burden of demonstrating that the claims arise under federal law, either through the well-pleaded complaint rule or one of its exceptions, and all doubts should be resolved against removal. See Eastman v. Marine Mech. Corp., 438 F.3d 544, 549 (6th Cir. 2006) (citations omitted). And if "a plaintiff believes that removal is improper because the complaint does not arise under federal law, the plaintiff may challenge removal, including by moving to remand the matter to state court." Gentek, 491 F.3d at 325.

### III. ANALYSIS

As explained above, "[a] complaint arises under federal law if it: (1) states a federal cause of action; (2) includes state-law claims that necessarily depend on a substantial and disputed federal issue; (3) raises state-law claims that are completely preempted by federal law; or (4) artfully pleads state-law claims that amount to federal-law claims in disguise." Brunner, 629 F.3d at 530. The "first and most common road to federal court" under the well-pleaded complaint rule is not at issue here, however, because the Complaint does not state a federal cause of action on its face. See Dillon, 992 F. Supp. 2d at 755; see also Dupervil v. All. Health Operations, LLC, No. 20-CV-4042 (PKC) (PK), --- F. Supp. 3d ---, 2021 WL 355137, at *8 (E.D.N.Y. Feb. 2, 2021), appeal docketed, No. 21-505 (2d Cir. Mar. 3, 2021). Instead, the Complaint merely alleges Tennessee law claims of gross negligence and recklessness. (Doc. No. 1-1 ¶¶ 22–47).

In any event, Gallatin argues that this case should stay in federal court because: (1) the Complaint's allegations necessarily depend on a substantial and disputed federal issue of whether

4

the immunities afforded under the PREP Act apply here; (2) the PREP Act completely preempts Bolton's claims; (3) Bolton's counsel has engaged in "artful pleading"; and (4) the Court should exercise its supplemental jurisdiction. (See Doc. No. 23; Doc. No. 29 at 6–8). The Court will address each of these arguments below after first summarizing the relevant provisions of the PREP Act.

A. The PREP Act

In conjunction with the Public Health Service Act, the PREP Act empowers the Secretary of the Department of Health and Human Services ("HHS") ("the Secretary") "to deem an event a 'public health emergency' and then take action to utilize funds established by the Treasury to manage the emergency." Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC, No. 20cv1198, 2020 WL 6140474, at *6 (W.D. Pa. Oct. 16, 2020) (citing 42 U.S.C. § 247d(a)); see also 42 U.S.C. § 247d(b)(1). If the Secretary determines that a public health emergency exists, "the Secretary may make a declaration . . . recommending . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures"[4] to combat the emergency. 42 U.S.C. § 247-6d(b)(1).

In March 2020, the Secretary used this power and deemed "the spread of SARS-CoV-2 or a virus mutating therefrom and the resulting disease, COVID-19," a "public health emergency" under the PREP Act. 85 Fed. Reg. 15198 (Mar. 17, 2020). The Secretary's Declaration, which has

---

[4] The PREP Act defines "covered countermeasure" as "a qualified pandemic or epidemic product"; "a security countermeasure"; a "drug . . . , biological product . . . , or device . . . that is authorized for emergency use in accordance with" certain enumerated sections of the Federal Food, Drug, and Cosmetic Act ("FDCA"); and "a respiratory protective device that is approved by the National Institute for Occupational Safety and Health . . . , and that the Secretary determines to be a priority for use during a [declared] public health emergency[.]" 42 U.S.C. § 247d-6d(i)(1). The Act further defines "qualified pandemic or epidemic product" and "security countermeasure" in §§ 247d-6d(i)(8) and (9) respectively.

5

been amended and expanded seven times to date, also recommended certain covered countermeasures to combat COVID-19. See id.

Where, as here, the Secretary recommends covered countermeasures, the PREP Act grants immunity from suit and liability to any "covered person" for any "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of [those authorized] covered countermeasures." 42 U.S.C. § 247d-6d(a)(1). Generally, the exclusive remedy for those injured "is an administrative 'Covered Countermeasure Process Fund' ('Process Fund'), administered by the Secretary, that provides 'timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure.'" Dupervil, 2021 WL 355137, at *6 (citing 42 U.S.C. §§ 247d-6e(a), 247d-6e(b)(1)). The Secretary's administration of the Process Fund is not subject to judicial review. 42 U.S.C. § 247d-(b)(5)(C).

The "sole exception" to the PREP Act's immunity provision is if a "death or serious physical injury [is] proximately caused by *willful misconduct*." 42 U.S.C. § 247d-6d(d)(1) (emphasis added). If that occurs, the PREP Act provides procedural rules and exhaustion requirements for the injured person to seek relief. 42 U.S.C. §§ 247d-6d(e), 247d-6e(d)(1). For example, the potential plaintiff can only file suit in the United States District Court for the District of Columbia, must prove by clear and convincing evidence that willful misconduct occurred, and may instead elect to accept compensation from the Process Fund if the Secretary determines he or she qualifies. 42 U.S.C. §§ 247d-6d(e)(1), 247d-6d(c)(3), 247d-6e(d)(5).

Last, the PREP Act also expressly preempts state laws that conflict with the terms of the Act:

> During the effective period of a declaration [by the Secretary], or at any time with respect to conduct undertaken in accordance with such declaration, no State or

6

political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that–

(A) is different from, or is in conflict with, any requirement applicable under this section; and

(B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the [FDCA].

42 U.S.C. § 247d-6d(b)(8).

With this framework in mind, the Court will now discuss Gallatin's specific arguments in favor of removal.

### B. Necessarily Raise a Substantial, Disputed Federal Question

Gallatin argues that removal is proper under the well-pleaded complaint rule because the Complaint on its face "invoke[s] a substantial federal question as to whether the broad immunities afforded under the PREP Act . . . apply[.]" (Doc. No. 23 at 11–12). In response, Bolton contends that her "allegations bear no resemblance to a federal claim," and that "[t]he complaint is devoid of any federal elements" and "never mentions the PREP Act." (Doc. No. 17 at 5–6).

In "a special and small category of cases," federal-question jurisdiction exists over state-law claims if those claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state juridical responsibilities." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005) (citations omitted). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013). "Where all four requirements are met, . . .

7

jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.'" Id. (quoting Grable, 545 U.S. at 313–314). On the other hand, "[i]f any of the four requirements is not satisfied, the exception does not apply." Dupervil, 2021 WL 355137, at *14 (citations omitted).

Applying these standards, the Court does not find that Bolton's state law claims "necessarily" raise a federal issue under the PREP Act. "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." New York *ex rel.* Jacobson v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 315 (6th Cir. 2016) (citing Grable, 545 U.S. at 314). For example, "[t]he paradigmatic example of a state claim with an embedded (though not necessarily significant) federal issue is a common-law claim for negligence per se based on the violation of a federal duty." See Dillon, 992 F. Supp. 2d at 756 (citing Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 814 (1986)). Here, however, no embedded federal issue exists because the Court could ignore entirely the PREP Act in determining whether Bolton established prima facie state-law claims for gross negligence and recklessness. Although PREP Act immunity could be an affirmative defense to those claims, it does not mean that Bolton's "claims are affirmatively premised on, or on their face necessarily require resolution of, the PREP Act." Dupervil, 2021 WL 355137, at *14. To quote the Supreme Court's clear guidance on this issue:

> [A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

8

Caterpillar, 482 U.S. at 399. Because Bolton's claims do not necessarily raise a federal issue, this case cannot be removed based on the embedded-federal-question doctrine set forth in Grable and Gunn.

As relevant here, the Court has also carefully considered the Secretary's Fourth Amended Declaration (Doc. No. 29 at 10–38) and the January 8, 2021 Advisory Opinion by HHS's Office of the General Counsel ("Advisory Opinion") (Doc. No. 32 at 3–7), both of which support Gallatin's argument that there is a serious federal interest in having federal courts interpret and apply the PREP Act. (See Doc. No. 23 at 11–12; Doc. No. 29 at 5–6). The relevant portion of the Fourth Amended Declaration states:

> There are . . . substantial federal legal and policy interests within the meaning of [Grable] in having a uniform interpretation of the PREP Act. Under the PREP Act, the sole exception to the immunity from suit and liability of covered persons is an exclusive Federal cause of action against a Covered Person for death or serious physical injury proximately caused by willful misconduct by such Covered Person. In all other cases, an injured party's exclusive remedy is an administrative remedy under section 319F-4 of the PHS Act. Through the PREP Act, Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations.

(Doc. No. 29 at 35). The HHS's Advisory Opinion cites the Fourth Amended Declaration and similarly asserts that "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." (Doc. No. 32 at 7). Having given proper weight to the Secretary's opinion, the Court adopts the following reasoning from a sister district court's case: "[a]lthough the Secretary's view on the federal interests underlying the PREP Act are compelling, neither the Fourth Amended Declaration nor the Advisory Opinion address whether [Bolton's] claims necessarily state a federal issue, such that a 'disputed question of federal law is a *necessary element of one of the well-pleaded state claims*.'" Estate of Winfred Cowan v. LP Columbia KY, LLC, No. 1:20-CV-00118-GNS, 2021 WL 1225965, at *6 (W.D. Ky. Mar. 31, 2021) (quoting Mikulski, 501 F.3d at 565).

9

For these reasons, the Court does not find that this case falls within the "special and small category of cases" where the embedded-federal-question doctrine applies, and it would therefore be improper to remove Bolton's case on that basis.

C. Complete Preemption

Gallatin alternatively argues that even if the Complaint on its face alleges only state-law causes of action, those claims still arise under federal law because "any claim falling under the broad ambit of the PREP Act is completely preempted."[5] (Doc. No. 23 at 5–11). For purposes of this section, the Court expresses no opinion regarding whether any of Bolton's state-law claims fall within the PREP Act's scope.

As an initial matter, it is important to note the critical difference between "ordinary preemption" and "complete preemption." See Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir. 1995) (en banc). Ordinary preemption is an affirmative defense that "applies to statutory sections that arguably supersede conflicting state law *without creating the right of removal*." Roddy v. Grand Trunk Western R.R. Inc., 395 F.3d 318, 323 (6th Cir. 2005) (citing Caterpillar, 482 U.S. at 398) (emphasis added). "The fact that a defendant might ultimately prove [its affirmative defense] that a plaintiff's claims are pre-empted under [a federal statute] does not establish that [those claims] are removable to federal court." Caterpillar, 482 U.S. at 398. Indeed, it is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the . . . complaint, and

---

[5] The law firm representing Gallatin made similar arguments to the United States District Court for the Middle District of Florida in two separate cases. (See Case Nos. 8:20-cv-01546, Doc. No. 36 (M.D. Fla. Aug. 21, 2020); 8:20-cv-02798, Doc. No. 16 (M.D. Fla. Jan. 7, 2021)). On both occasions, the court found that the PREP Act is not a complete preemption statute and remanded the case to state court. Gunter v. CCRC OPCO-Freedom Square, LLC, No. No. 8:20-cv-T-36TGW, 2020 WL 8461513 (M.D. Fla. Oct. 29, 2020); Estate of Smith v. Bristol at Tampa Rehab. and Nursing Ctr., LLC, No. 8:20-cv-2798-T-60SPF, 2021 WL 100376 (M.D. Fla. Jan. 12, 2021).

10

even if both parties concede that the federal defense is the only question truly at issue." Id. at 393 (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 12 (1983)). Thus, for purposes of ruling on Gallatin's motion to remand, the Court need not decide whether Bolton's state-law claims are subject to ordinary preemption under the Prep Act.

On the other hand, complete preemption is jurisdictional and is "reserved for statutes 'designed to occupy the regulatory field with respect to a particular subject and to create a superseding cause of action[.]'" Roddy, 395 F.3d at 323 (quoting Warner, 46 F.3d at 535). As discussed above, if an area of law is "completely preempted," then any civil complaint raising state law claims in that area of law necessarily alleges claims that are federal in character, and the action is subject to *removal* notwithstanding the well-pleaded complaint rule. Id. (quoting Metro. Life, 481 U.S. at 63–64); Loftis, 342 F.3d at 515. The Sixth Circuit has "made clear," however, "that 'complete preemption' no matter how powerful when properly present in a case—is . . . a very limited exception to the well-pleaded complaint rule[,]" and is applied "only when the federal statutory language demonstrates that Congress has manifested a clear intent that claims not only be preempted under the federal law, but also that they be removable[.]" Palkow, 431 F.3d at 553. Indeed, this so called "'super preemption' or 'preemption on steroids,' id., is so extraordinary and rare, that "the Supreme Court has recognized complete preemption under only three statutes: § 301 of the Labor Management Relations Act, . . . the Employee Retirement Income Security Act of 1974, . . . and § 30 of the National Bank Act[.]"[6] Roddy, 395 F.3d at 323 (citing Anderson, 539 U.S. at 6–7)).

---

[6] The Sixth Circuit has expanded the complete preemption doctrine to even fewer statutes. See Dillon, 992 F. Supp. at 758 (collecting cases and noting that the Sixth Circuit has recognized complete preemption under the Copyright Act and the National Flood Insurance Act).

11

The key takeaway from these cases is that the complete preemption doctrine applies only if a federal statute "provide[s] the exclusive cause of action for the claim asserted *and* also set[s] forth procedures and remedies governing that cause of action." Anderson, 539 U.S. at 8 (citations omitted) (emphasis added). Here, the Court agrees that "the PREP Act does not provide the exclusive cause of action for claims that fall within its scope; in fact, for the most part, the Act provides no causes of action at all." Dupervil, 2021 WL 355137, at *9. In reaching this conclusion, the Court adopts the following reasoning from Dupervil, a nearly identical case involving similar state-law claims against a nursing home:[7]

> [I]t is important to note that the PREP Act is, at its core, an immunity statute; it does not create rights, duties, or obligations. See 42 U.S.C. § 247d-6d(a)(1). Accordingly, in providing immunity from suit to certain covered persons for certain types of claims, the PREP Act confers primary jurisdiction over most claims within its scope not to the federal courts but to the Secretary, who has the sole authority to administer and provide compensation from a "Covered Countermeasure Process Fund." See 42 U.S.C. §§ 247d-6e(a), 247d-6e(b). Even with PREP Act claims involving "willful misconduct," which may be brought exclusively in the United States District Court for the District of Columbia, the plaintiff must first exhaust administrative remedies, and may elect to accept compensation from the Process Fund instead of filing suit in federal court. 42 U.S.C. §§ 247d-6e(d)(1), 247d-6e(d)(5); see also 42 U.S.C. §§ 247d-6d(d)(1), 247d-6d(e)(1). Thus, except for one narrow exception, PREP Act claims cannot be brought in federal court.

Id.; see also Winfred Cowan, 2021 WL 1225965, at *4. Without creating a parallel federal cause of action for PREP Act claims, Congress has not manifested a clear intent for the PREP Act to occupy the field so completely that any "ostensibly state law claim" touching on a response (or lack thereof) to COVID-19 "is in fact a federal claim" for purposes of removal jurisdiction. Roddy, 395 F.3d at 323, 325 (quoting AmSouth Bank v. Dale, 386 F.3d 763, 776 (6th Cir. 2004)).

---

[7] Bolton filed a Submission of New Authority (Doc. No. 43) notifying the Court of Dupervil and its application to her motion to remand. Gallatin never filed a response regarding Dupervil, which suggests to the Court that the Eastern District of New York's decision is factually analogous and persuasive, if not convincing, authority here.

12

The United States apparently disagrees with this conclusion because it filed a "Statement of Interest"[8] contending that the Air Transportation Safety and System Stability Act ("ATSSSA"), which the Second Circuit in In re WTC Disaster Site, 414 F.3d 35 (2d Cir. 2005) held completely preempted state law claims arising out of the attacks on September 11, 2001, is "structurally similar to the PREP Act." (Doc. No. 35-1 at 5; see also Doc. No. 23 at 7). Sure, the Court agrees that the two statutes are somewhat analogous, particularly because the ATSSSA created a "Victim Compensation Fund to provide relief, without litigation, to individuals (or relatives of deceased individuals) physically injured or killed as a result of the September 11 aircraft crashes[.]" WTC Disaster Site, 414 F.3d at 373 (citing ATSSSA §§ 403, 405). But the crucial difference between the ATSSSA and the PREP Act, at least with respect to complete preemption, is that the ATSSSA also created "a Federal cause of action for damages arising out of the hijacking and subsequent crashes" that could only be filed in the United States District Court for the Southern District of New York and provided that "this *cause of action* shall be the *exclusive* remedy for [those] damages[.]" Id. at 375 (quoting ATSSSA § 408) (emphasis added). The Second Circuit concluded that these provisions "undeniably bespeak an intent" by Congress to "preempt *all* state-law claims for [those] damages." Id. (emphasis added). Here, however, the PREP Act creates no similar exclusive federal cause or right of action for claims other than those involving willful misconduct, and even those claims require administrative exhaustion before they may be filed in federal court. Winfred Cowan, 2021 WL 1225965, at *4; Dupervil, 2021 WL 355137, at *10–11; see also Anderson, 539 U.S. at 8.

---

[8] This Statement of Interest (Doc. No. 35-1) is best characterized as exactly that: a statement of interest. In it, "[t]he United States takes no position on whether the Complaint includes any claim that falls within the ambit of [the PREP Act], and thus necessarily takes no position as to whether any particular claim in this case is completely preempted by the Act." Id. at 13.

Although the Court has engaged in its own independent analysis, it is worth noting that nearly every district court to consider whether the PREP Act completely preempts similar state-law claims against nursing homes "has concluded the PREP Act is not a complete preemption statute, or at least does not have such an effect on claims like those presented here." See, e.g., Winfred Cowan, 2021 WL 1225965, at *4 (collecting cases); see also (Doc. No. 46 at 1). Indeed, the *only* case to conclude otherwise is Garcia v. Welltower OPCo Grp. LLC, No. SACV 20-02250 JVS, 2021 WL 492581, at *7 (C.D. Cal. Feb. 10, 2021), appeal docketed, No. 21-55224 (9th Cir. Mar. 10, 2021). Critical to Garcia's holding, however, was the court's deference to the HHS's January 8, 2021 Advisory Opinion (Doc. No. 32 at 3–7), which opined that the PREP Act is a complete preemption statute because it establishes both "a federal cause of action, administrative or judicial, as the only viable claim [and] vests exclusive jurisdiction in a federal court." (See Doc. No. 32 at 3–7); see also Garcia, 2021 WL 492581, at *7 ("Given this recent guidance, the Court finds that the PREP Act provides for complete preemption.").

But Garcia is nonbinding, and this Court joins the other district courts that have unanimously concluded that the HHS's Advisory Opinion should not receive unfettered deference.[9] First, to the extent Garcia gave Chevron deference to the Advisory Opinion, that would have been clear error because the Advisory Opinion itself expressly states that "[i]t is not a final agency action or a final order" and "does not have the force or effect of law." (Doc. No. 32 at 7);

---

[9] E.g., Dupervil, 2021 WL 355137; Winfred Cowan, 2021 WL 1225965; Robertson v. Big Blue Healthcare, Inc., No. 2:20-cv-02561-HLT-TJJ, 2021 WL 764566 (D. Kan. Feb. 26, 2021); Estate of McCalabb v. AG Lynwood, LLC, No. 2:20-cv-09746-SB-PVC, 2021 WL 911951 (C.D. Cal. Mar. 1, 2021); Lopez v. Life Care Ctr. of Am., Inc., No. CV 20-0958 JCH/LF, 2021 WL 1121034 (D.N.M. Mar. 24, 2021); Schuster v. Percheron Healthcare, Inc., No. 4:21-cv-00156-P, --- F. Supp. 3d ---, 2021 WL 1222149 (N.D. Tex. Apr. 1, 2021); see also Ivey v. Serrano Post Acute, LLC, No. CV 20-11773 DSF (SKx), 2021 WL 1139741 (C.D. Cal. Mar. 25, 2021) (concluding that "HHS has not been delegated authority over the interpretation of judge-created federal jurisdiction doctrines such as complete preemption and is due no deference for its musings on such matters").

see Air Brake Sys., Inc. v. Mineta, 357 F.3d 632, 642 (6th Cir. 2004) ("only those administrative interpretations that Congress and the agency intend to have the 'force of law,' as opposed to those merely characterized as 'authoritative,' qualify for Chevron deference") (citations omitted). Second, "[e]ven if the [Advisory Opinion] did not include the clear disclaimer language, the authority Congress delegated to HHS to make rules carrying the force of law did not include authority to interpret the jurisdiction of the federal courts." Estate of Jones v. St. Jude Operating Co., LLC, No. 3:20-cv-01088-SB, 2021 WL 900672, *6 (D. Or. Feb. 16, 2021) (citations omitted). Last, and probably most important, the Advisory Opinion's interpretation lacks the "power to persuade," in part because it "cites no cases for its proposition that an exclusive federal *administrative* remedy is sufficient for complete preemption." Dupervil, 2021 WL 355137, at *10 (citing United States v. Mead Corp., 533 U.S. 218, 235 (2001)).

Gallatin's other arguments, including its contention that the PREP Act's express preemption clause in 42 U.S.C. § 247d-6d(b)(8) "would apply to the enforcement of common law . . . claims for negligence," (Doc. No. 23 at 10; see also id. at 12–22), reflect a misunderstanding of ordinary and complete preemption. Again, the potential of "mere immunity against state law or preemption of state law is not the equivalent of *complete* preemption and *does not provide removal jurisdiction*." Saldana v. Glenhaven Healthcare LLC, No. Cv 20-5631 FMO (MAAx), 2020 WL 6713995, at *2 (C.D. Cal. Oct. 14, 2020) (emphasis added). By concluding that the PREP Act is not a complete preemption statute for any claims, the Court takes no position on whether Gallatin or any other similar-situated defendant could successfully raise an ordinary preemption defense under the PREP Act against state-law claims involving actions or inactions in response to COVID-

15

19.[10] That is a matter left for state courts to decide.[11] Instead, the Court only holds that the PREP Act does not provide removal jurisdiction and that Bolton remains the master of her complaint and is free to litigate her claims (and Gallatin's potential preemption defense) in state court. See Gentek, 491 F.3d at 325.

> D. Artful Pleading

Gallatin also argues that this case should be removed under the artful pleading doctrine because "the true nature of this case" is about the allegedly "defective policies and negligent enforcement of policies related to the use and administration of COVID-19 countermeasures." (Doc. No. 23 at 22–24). "Under the artful-pleading doctrine, a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute." Mikulski, 501 F.3d at 561 (citing Franchise Tax Bd., 463 U.S. at 22)). "But the 'artful pleading' doctrine does not apply whenever it is *possible* to construe a state-law theory as a federal one." Brunner, 629 F.3d at 532. "Rather, [t]he artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim, or perhaps . . . where federal issues necessarily must be resolved to address the state law causes of action." Id. (citations and internal quotation marks omitted).

---

[10] While other district courts have taken the opportunity to decide whether certain state law claims would be covered by the PREP Act, see, e.g., Dupervil, 2021 WL 355137, at *12–*13, the Court declines Gallatin's invitation to do so here. (See Doc. No. 23 at 12–22). Aside from not wanting to decide issues that are irrelevant to the instant motion, the Court believes that addressing those issues in dicta would only serve to further obfuscate the concepts of ordinary and complete preemption.

[11] The Court strongly encourages state court judges to consider carefully the constitutional concerns with the PREP Act that were raised and read into the Congressional record on December 21, 2005. See 151 Cong. Rec. 30734–35 (2005) (statement of Sen. Leahy).

16

The Court finds that there is no artful pleading in this case for the same reasons that the PREP Act is not a complete preemption statute (see Section III.C *supra*) and Bolton's claims do not necessarily depend on the issue of PREP Act immunity (see Section III.B *supra*). Moreover, because the PREP Act does not create a federal cause of action for claims that do not involve willful misconduct, there is no way "a federal cause of action . . . might have been invoked by a less artfully drafted complaint." Mikulski, 501 F.3d at 563. Accordingly, the artful pleading doctrine does not create federal question jurisdiction in this case.

### E. Supplemental Jurisdiction

Curiously, Gallatin argues that the Court can exercise supplemental jurisdiction over Bolton's state-law claims under 28 U.S.C. § 1367(a) because this case was removed (albeit improperly). (See Doc. No. 29 at 6–8). The Sixth Circuit has spoken directly on this issue, holding that "[t]he supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction and a removal petition therefore may not base subject-matter jurisdiction on the supplemental-jurisdiction statute[.]" Ahearn v. Charter Twp. of Bloomfield, 100 F.3d 451, 456 (6th Cir. 1996) (citations omitted). Given this binding and unambiguous precedent, the Court cannot exercise supplemental jurisdiction over state-law claims that were removed in error.

## IV. ATTORNEY FEES AND COSTS

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). But "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005).

17

Bolton originally sought an award of attorneys' fees and costs under § 1447(c), (Doc. No. 17 at 8–9), but she has since withdrawn that request in light of Garcia, (Doc. No. 43 at 8). Accordingly, Bolton's request for fees under § 1447(c) will be denied as moot.

## V. CONCLUSION

The Court is mindful of the United States' policy arguments that reasonably emphasize the urgent need for the federal judiciary to provide a consistent national interpretation of the PREP Act during a pandemic that has taken the lives of more than 500,000 citizens. But the Court must also respect the statutory scheme created by Congress and the plain meaning of the words selected by Congress to provide the immunity created in the PREP Act. Because Congress has not yet acted to align its intent with the United States' interests expressed here, and for the foregoing reasons, the Court will grant Bolton's Motion to Remand (Doc. No. 17) and remand this matter to the Circuit Court for Sumner County, Tennessee.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE